UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

_____
                                         )
**MIRELLA BARRIGA-BERMUDEZ,**            )
**GABRIELA LIZBETH DOMINGUEZ-AVILA,** )
**EFREN FLORES-HERNANDEZ,**              )
**DAMIAN GALICIA-GONZALEZ,**             )
**SEBASTIAN  HERNANDEZ-MENA,**           )
**JOSE LUIS RAMIREZ-CALVILLO,**          )
**GUILLERMO RIVERA-MACIAS and**          )
**YURELI TORRES,**                       )
                                         )
         **Plaintiffs,**                 )
                                         )
    **vs.**                              )
                                         )
**RODRIGO GUTIERREZ- TAPIA,**            )
                                         )
         **Defendant.**                  )
_____ )


**COMPLAINT FOR DAMAGES, COSTS OF LITIGTION**
**AND ATTORNEY'S FEES**

**INTRODUCTION**

1.   This is an action by eight Mexican nationals who lawfully entered the United States to

perform labor harvesting blueberries, sweet potatoes and other crops in Florida, North Carolina

or Georgia for Defendant Rodrigo Gutierrez-Tapia at various times during 2013 or 2014.

Plaintiffs bring this action to recover minimum wages due to them under the Fair Labor

Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").  In addition, Plaintiffs seek damages for

Defendant's breaches of his work contract with Plaintiffs. These contractual breaches include

failure to provide wage and transportation benefits and to maintain payroll records as promised

in the contracts and as required by applicable federal regulations governing the H-2A agricultural guestworker program.

2.   Defendant recruited Plaintiffs from México, making false promises and misrepresentations regarding the terms and conditions of employment in order to induce Plaintiffs to work for him in the United States.

3.   Plaintiff Efren Flores-Hernandez asserts claims against Defendant for violations of the Trafficking Victims Protection Reauthorization Act, ("TVPRA"), 18 U.S.C. §§ 1581 *et. seq*.

4.   Plaintiffs seek damages to redress these violations of the law.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce), 29 U.S.C. § 216(b) (FLSA) and 18 U.S.C § 1595(a) (TVPRA).  The court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367, because these state law claims are so closely related to the federal claims that they form part of the same case and controversy.

6.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because of Defendant is a resident of this district. Venue is also proper in this district pursuant to 18 U.S.C. § 1965, because Defendant is a resident of this district and transacts his affairs within this district.

## PARTIES

7.   Defendant Rodrigo Gutierrez-Tapia is a farm labor contractor residing in Bowling Green, Hardee County, Florida. As a farm labor contractor, Defendant recruits, hires, transports and furnishes migrant agricultural workers from various Mexican states to assist with the harvest of various crops in Florida, North Carolina, Georgia and other states.

8.   At various times in 2013 and 2014, Defendant employed Plaintiffs and other agricultural guest workers in Florida, Georgia or North Carolina to harvest blueberries, sweet potatoes and other crops for sale in interstate commerce.

9.   Plaintiffs are citizens of México who were admitted to the United States on temporary visas pursuant to 8.U.S.C. §101(a)(15)(ii)(a) to hand-pick various crops for Defendant. At all times relevant to this action, Plaintiffs were engaged in the production of goods for commerce, and/or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

10. Plaintiff Mirella Barriga-Bermudez is a resident of Zamora, Michoacán, México. She performed agricultural labor for Defendant in Florida and North Carolina from March through July 2014. Plaintiff Barriga-Bermudez was recruited in Zamora, Michoacán for this employment by an agent of Defendant.

11. Plaintiff Gabriela Lizbeth Dominguez-Avila is a resident of Zamora, Michoacán, México. She performed agricultural labor for Defendant in Florida and North Carolina from March through November 2014. Plaintiff Dominguez-Avila was recruited in Zamora, Michoacán for this employment by an agent of Defendant.

12. Plaintiff Efren Flores-Hernandez is a resident of Leon, Guanajuato, México. He performed agricultural labor for Defendant in Florida and North Carolina from March 2013 through July 2013. Plaintiff Flores-Hernandez was recruited in Leon, Guanajuato for this employment by an agent of Defendant.

13. Plaintiff Damian Galicia-Gonzalez is a resident of Hidalgo, Mexico. He performed agricultural labor for Defendant near Baxley, Georgia from June 2014 through July 2014.

Plaintiff Galicia-Gonzalez was recruited in Hidalgo, México for this employment by an agent of Defendant.

14. Plaintiff Sebastian Hernandez-Mena is a resident of León, Guanajuato, México. He performed agricultural labor for Defendant in North Carolina from June through July 2013. Plaintiff Hernandez-Mena was recruited in Leon, Guanajuato for this employment by an agent of Defendant.

15. Plaintiff Jose Luis Ramirez-Calvillo is a resident of León, Guanajuato, México. He performed agricultural labor for Defendant in North Carolina from June through July 2013. Plaintiff Ramirez-Calvillo was recruited in Leon, Guanajuato for this employment by an agent of Defendant.

16. Plaintiffs Guillermo Rivera-Macias is a resident of Leon, Guanajuato, México. He performed agricultural labor for Defendant in North Carolina from June through July 2013. Plaintiff Rivera-Macias was recruited in Leon, Guanajuato for this employment by an agent of Defendant.

17. Plaintiff Yureli Torres is a resident of Morelia, Michoacán, Mexico and performed agricultural labor for Defendant from May 2014 through June 2014 in Florida. Plaintiff Torres was recruited in Morelia, Michoacán for this employment by an agent of Defendant.

## FACTS

### H-2A PROGRAM BACKGROUND

18. An agricultural employer may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that there are insufficient available workers within the U.S. to perform the job and the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188 (a)(1). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

19. Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the U.S. Department of Labor ("DOL"). 20 C.F.R. §655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F. R. § 655.122  Among these terms are the following:

(a) The employer will pay all workers at least the applicable adverse effect wage rate for every hour or portion thereof worked during a pay period.  20 C.F.R. § 655.122(l);

(b) The employer will keep accurate and adequate records with respect to the workers' earnings and deductions from wages.  20 C.F.R. § 655.122(j);

(c) The employer will abide by the requirements of 20 C.F.R. § 653.501, including the requirements of 20 C.F.R. §653.501(d)(4), mandating compliance with state minimum wage laws;

(d) For those employees paid on a piece rate basis, the worker's piece-rate earnings will be supplemented in any pay period in which they do not equal at least the amount the

worker would have earned had he been paid at the adverse effect wage rate. 20 C.F.R. § 655.122(l)(2);

(e)  The employer and his agents will not seek or receive payment of any kind from any H-2A worker for any activity related to obtaining H-2A labor certification, including recruitment costs. 20 C.F.R. § 655.135(j); and

(f)  The employer contractually will forbid any foreign labor contractor or recruiter (or any agent of such foreign labor contractor or recruiter) whom he engages either directly or indirectly in the international recruitment of H-2A workers from seeking or receiving payments or other compensation from prospective employees.  20 C.F.R. § 655.135(k).

## Defendant's Applications for Labor Certification

20.   In order to import foreign workers to harvest crops at various locations in 2013 or 2014, Defendant submitted a number of temporary labor certifications to the Office of Foreign Labor Certification of the DOL's Employment and Training Administration. Accompanying each labor certification application was a clearance order containing the terms for the specific job.

21. The Office of Foreign Labor Certification approved Defendant's applications for temporary labor certification to employ foreign workers during 2013 and 2014 at various sites in Florida, Georgia and North Carolina.

## Defendant's Recruitment of Plaintiffs in Mexico in 2013

22. Plaintiffs Guillermo Rivera-Macias, Jose Luis Ramirez-Calvillo, and Sebastian Hernandez-Mena were recruited in Léon, Guanajuato, México in the spring of 2013 by Defendant's agent, Jesus Cedillo to fill positions described in various of Defendant's temporary labor certification applications and clearance orders.

- 6 -

23. Plaintiff Efren Flores-Hernandez was recruited in Léon, Guanajuato, México in the spring of 2013 by Defendant's agent, Jesus Cedillo, to fill one of the positions described in various of Defendant's temporary labor certification applications and clearance orders. At the time he recruited Plaintiff Flores-Hernandez, Cedillo represented that the work would last for eight months and Flores-Hernandez could earn $400 to $600 per week. Relying on these promises, Plaintiff Flores-Hernandez accepted Defendant's offer of employment.

24. Plaintiffs Flores-Hernandez, Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena each paid a fee to Jesus Cedillo in order to have their names included on a list of individuals available for hire with Defendant. In addition to this recruitment fee, Cedillo required each of these Plaintiffs to pay a "guarantee" in the amount of 30,000 Mexican pesos, which Cedillo indicated was to ensure that the Plaintiffs would not abscond Defendant's employ while in the U.S. Cedillo promised that these "guarantee" funds would be returned upon completion of the contract.

25. Because Plaintiff Flores-Hernandez lacked funds to pay the fee for the guarantee, Cedillo offered to take a lien in the amount of the guarantee on a parcel of land owned by Flores-Hernandez's father. This parcel of land was the chief asset of Plaintiff Flores-Hernandez's family and had been purchased with all of the family's savings.

26. At the direction of Defendant's agent, Plaintiffs Flores-Hernandez, Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena each traveled at their own expense from their homes in the state of Guanajuato to Nuevo Leon, Tamaulipas for their H-2A visa interviews. The visa application process took several days, during which each of these Plaintiffs incurred lodging expenses in Nuevo Laredo. Each of these Plaintiffs paid a visa application fee to the U.S. State Department.

27. Prior to traveling to their visa interviews, Plaintiffs Flores-Hernandez, Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena met with Defendant or his agents.  Defendant or his agents told these Plaintiffs that they were not to say anything to the consular officials about the guarantee that had been paid to Cedillo and warned that if they did, none of them would receive a visa.

28. Plaintiffs Flores-Hernandez, Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena were interviewed by consular officials in Nuevo Laredo regarding their applications for H-2A visas. As ordered by Defendant or his agents, these Plaintiffs made no mention of the payment of the 30,000 Mexican peso "guarantee" when questioned by the consular officials regarding payment of any charges to Defendant or his agents.

29. Once their visa applications were approved, Plaintiffs Flores-Hernandez, Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena traveled to the U.S./Mexico border, where each of them paid from his own personal funds a $6 fee for issuance of an immigration arrival/departure document commonly referred to as Form I-94.  Flores-Hernandez entered the United States on or about March 26, 2013.  Plaintiffs Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena entered the United States several months later, in or about June, 2013.

30. Upon entering the United States as described in Paragraph 29, Plaintiff Flores-Hernandez was transported by Defendant's agent to Brooksville, Florida.

31.   Upon entering the United States as described in Paragraph 29, Plaintiffs Rivera-Macias, Ramirez-Calvillo and Hernandez-Mena were transported by buses operated by agents of Defendant to Dunn, North Carolina.

**Defendant's Recruitment of Plaintiffs in Mexico in 2014**

32. In early 2014, Defendant's agents recruited Plaintiffs Mirella Barriga-Bermudez, Gabriela Lizbeth Dominguez-Avila and Yureli Torres in the Mexican state of Michoacán to fill positions described in various of Defendant's temporary labor certification applications and clearance orders.

33. In early 2014, Defendant's agent recruited Plaintiff Damian Galicia-Gonzalez in the Mexican state of Hidalgo to fill one of the positions described in various of Defendant's temporary labor certification applications and clearance orders.

34. In recruiting Plaintiffs Barriga-Bermudez, Dominguez-Avila, Galicia-Gonzalez and Torres, Defendant and his agents represented that although H-2A visas had been requested for a period of two months, the work would actually last as much as eight months longer by extending these Plaintiffs' visas for employment in other locations. Defendant's agents also represented to these Plaintiffs that each of them would earn up to $800.00 per week. Relying on these promises, Plaintiffs accepted Defendant's offer of employment.

35. In the spring of 2014, at the direction of Defendant's agents, Plaintiffs Barriga-Bermudez, Dominguez-Avila and Torres traveled at their own expense from their homes in the state of Michoacán to Nuevo Laredo, Tamaulipas for their H-2A visa interviews.  The visa application process took several days, during which each of these Plaintiffs incurred lodging expenses in Nuevo Laredo.  Each of these Plaintiffs paid a visa application fee to the U.S. State Department.

36. In the spring of 2014, at the direction of Defendant's agent, Plaintiff Galicia-Gonzalez traveled at his own expense from his home in the state of Hidalgo to Monterrey, Nuevo Leon for his H-2A visa interviews.  The visa application process took several days, during which Plaintiff

Galicia-Gonzalez incurred lodging expenses in Monterrey.  Plaintiff Galicia-Gonzalez paid a visa application fee to the U.S. State Department.

37. Once their respective visa applications were approved, Plaintiffs Barriga-Bermudez, Dominguez-Avila, Galicia-Gonzalez and Torres traveled to the U.S./Mexico border, where each of them paid from her own personal funds a $6 fee for issuance of an immigration arrival/departure document commonly referred to as Form I-94.

38. Upon entering the United States as described in Paragraph 37, Plaintiffs Barriga-Bermudez, Dominguez-Avila, Galicia-Gonzalez and Torres were transported by Defendant's agent to Florida, where they were assigned to housing facilities by Defendant's agents.

**Plaintiffs' Employment with Defendant**

39. Plaintiff Efren Flores-Hernandez harvested blueberries in Florida from March 2013 through mid-May 2013. Part of this work was near Brooksville, with the remainder near Wauchula.  In mid-May 2013, when Flores-Hernandez's visa was about to expire, Defendant transferred him to Rocky Point, North Carolina where he harvested blueberries. Subsequently, Plaintiff Flores-Hernandez was transferred to Clinton, North Carolina, where he harvested vegetables.

40. Plaintiffs Sebastian Hernandez-Mena, Jose Luis Ramirez-Cavillo and Guillermo Rivera-Macias harvested cucumbers with Defendant's crew near Dunn, North Carolina from early June to July 2013.

41. Plaintiff Mirella Barriga-Bermudez, Gabriela Lizbeth Dominguez-Avila harvested blueberries with Defendant's crew in Wauchula, Florida from March 2014 through May 2014. At that point, Plaintiffs Barriga-Bermudez and Dominguez-Avila, along with other co-workers,

were transferred by Defendant to harvest blueberries and cultivate sweet potato plants near
Clinton, North Carolina from May through July 2014.

42. Plaintiff Yureli Torres harvested blueberries with Defendant's crew in Wauchula, Florida
from March 2014 through late April 2014.

43. Plaintiff Damian Galicia-Gonzalez harvested blueberries with Defendant's crew near
Baxley, Georgia from June 2014 through July 2014.

44. Defendant did not reimburse Plaintiffs during their first week of employment for the
costs they incurred for transportation between their respective homes and the jobsite, their visa
costs, I-94 fee or lodging expenses in the consular city.

45. Plaintiffs were compensated on a piece-rate basis for harvesting work with Defendant's
crew. Plaintiffs' weekly earnings for piece-rate work typically fell below the adverse effect wage
rate. Defendant failed to supplement Plaintiffs' piece-rate earnings so that their weekly earnings
equaled the adverse effect wage rate.

**Defendant's Treatment of Plaintiff Flores-Hernandez**

46. Throughout his employment with Defendant, Plaintiff Flores-Hernandez was subjected to
harassment and threats of violence and was forced to labor by Defendant and his supervisors.

47. Defendant harassed Plaintiff Flores-Hernandez by calling him names throughout his
employment.  Defendant repeatedly used offensive language, calling him a homosexual, in order
to humiliate and belittle him and demonstrate Defendant's control over him and his co-workers.

48. Defendant brandished a gun in front of Plaintiff Flores-Hernandez while he was working
in a field with Defendant's crew.  Defendant boasted of his experience in the U.S. Marine Corps
in Iraq and stated how he enjoyed fighting.  Defendant's brandishing of the gun created in
Plaintiff Flores-Hernandez a fear of physical harm.

49. The H-2A visas issued to Plaintiff Flores-Hernandez and a number of his co-workers expired in May, 2013, as the Florida blueberry harvest was drawing to a close.  Defendant and his agents assured Plaintiff Flores-Hernandez and the other crewmembers that their visas would be extended, thereby allowing them to continue to work with Defendant's crew.  One of Plaintiff Flores-Hernandez's co-workers requested that Defendant provide proof that the workers' visas had in fact been extended. Defendant told the workers their visas had been extended but refused to provide a copy of the supposed extension unless the workers paid an exorbitant fee. Defendant knew that the fee he set for the workers to receive copies of the visa extension documents was far above the ability of Plaintiff Flores-Hernandez and his co-workers to pay. This reasonably caused Plaintiff Flores-Hernandez to believe Defendant had not actually obtained an extension of the visa.  With his passport containing an expired visa, Plaintiff Flores-Hernandez feared deportation, which would have meant he and his family could not repay the lien on their land and would face financial ruin.

50. In or about May, 2013, Plaintiff Flores-Hernandez was transferred by Defendant from Florida to North Carolina.  Plaintiff Flores-Hernandez initially worked picking blueberries near Rocky Point, North Carolina and was later employed harvesting cucumbers near Clinton, North Carolina.

51. The North Carolina work was very physically demanding and the crew was assigned to work long days in hot, humid conditions.   Although Defendant's clearance order indicated that the normal work day would be seven hours in length, Defendant required the crew to work hours far in excess of this amount virtually every day, with only a 30 minute break for lunch. Defendant would discipline workers who took additional breaks.  Workers were not allowed to stop work early, and all workers were required to continue harvesting until Defendant

determined the workday had ended.  Workers who attempted to take additional rest breaks or stop picking before the end of the workday were forced by Defendant and his agents to return to the field to work.  Plaintiff Flores-Hernandez wished to take additional rest breaks during the day, but did not do so because he feared violence from Defendant and his agents, as well as repercussions to his family if he was repatriated by Defendant.

52. Plaintiff Flores-Hernandez had desperately wanted to leave Defendant's employ, but he was constrained by fear for his safety because of the threats and abuse and his fear for the consequences for his family in Mexico if he left and Defendant refused to return the real property the Plaintiff's family had pledged as a "guarantee."

53. After investigators from the U.S. Department of Labor's Wage and Hour Division learned of the "guarantee" paid by Plaintiff Flores-Hernandez, Defendant's agents in Mexico returned the property that had been pledged as security to Flores-Hernandez's family.

54. In July 2013, after receiving information from his family in Mexico that the deed to his family's land had been returned, Plaintiff Flores-Hernandez surreptitiously fled from the temporary accommodations in which he had been placed and left Defendant's employ.

## COUNT I

### FAIR LABOR STANDARDS ACT

55. Plaintiffs bring this claim for Defendant's violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

56. Defendant violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs at least $7.25 for every compensable hour of labor performed in each workweek during which they were employed.

57. The violations of the minimum wage provisions of the FLSA as set out in Paragraph 56 resulted in part from Defendant's failure to reimburse Plaintiffs during their first week of employment for expenses incurred primarily for the benefit of Defendant, including Plaintiffs' lodging expenses near the U.S. Consulate, visa costs, issuance of Form I-94, and the full cost of Plaintiffs' travel from their homes to Defendant's jobsite.

58. The violations of the FLSA as set out in Paragraph 56 resulted in part from Defendant's failure to supplement Plaintiffs' piece-rate earnings so that they equaled or exceeded the FLSA minimum wage for work performed in each workweek.

59. The violations of the FLSA set out in this count were willful within the meaning of 29 U.S.C. § 255.  Defendant recklessly disregarded his obligations under the minimum wage provisions of the FLSA and engaged in a continuing series of schemes to conceal these violations.

60. As a consequence of Defendant's violations of the FLSA, Plaintiffs are entitled to recover the minimum wages due each of them plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

## COUNT II

### BREACH OF CONTRACT

61. This claim is brought by Plaintiffs for damages resulting from Defendant's breach of the employment contracts, as embodied in the clearance orders filed on his behalf and under which Plaintiffs were employed on his operations.

62. The terms and conditions of employment contained in the various clearance orders constituted the employment contracts between Defendant and the H-2A workers, including

Plaintiffs, the terms of which were supplied by federal regulations at 20 C.F.R. §§ 655.121, 655.122 and 655.135.

63. Defendant breached his employment contracts with Plaintiffs by providing terms and conditions of employment that were materially different from those in the clearance orders, including the following:

      a.   None of the Plaintiffs were paid the applicable adverse wage effect rate for their labor, as set out in Paragraph 45;

      b.   Defendant failed to maintain accurate payroll records by failing to accurately record the actual hours worked;

      c.   Defendant failed to comply with the FLSA, as set out in Count I, and other employment-related laws;

      d.   Defendant did not provide subsistence payments to Plaintiffs Barriga-Bermudez, Dominguez-Avila, Flores-Hernandez, Galicia-Gonzalez, for their travel between their homes and Defendant's jobsite after these Plaintiffs completed the first 50% of the contract period;

      e.   Defendant failed to pay all required return expenses for Plaintiffs Barriga-Bermudez and Galicia-Gonzalez, who completed their contracts, including transportation to their respective home village and subsistence en route.

64. Defendant's breach of his employment contract with Plaintiffs caused substantial injuries.

## COUNT III

## TRAFFICKING VICTIMS' REAUTHORIZATION PROTECTION ACT

65.    This claim is brought by Plaintiff Efren Flores-Hernandez for violations of the Trafficking Victims Reauthorization Protection Act, 18 U.S.C. § 1595.

66. Defendant subjected Plaintiff Flores-Hernandez to forced labor in violation of 18 U.S.C.

§ 1589.  Through his agent, Defendant obtained the services of Plaintiffs through deceit and false

promises

67. As set out in Paragraphs 24 and 25, at the time he was recruited for work with

Defendant's crew, Plaintiff Flores-Hernandez was told by Defendant's agent that obtaining

employment with Defendant required that he pay a "guarantee" of 30,000 Mexican pesos to

ensure that he completed his contracts with Defendant.   Lacking this amount, Plaintiff Flores-

Hernandez secured this "guarantee" with a lien on his father's property.

68. After he invested substantial expenses necessary to obtain the job with Defendant and

pledged his family's property as a guarantee for his completing the contract period, Plaintiff

Flores-Hernandez to Nuevo Laredo at his own expense, where he met Defendant.  Defendant

then instructed Plaintiff Flores-Hernandez to lie and not tell the consular officers about the

guarantee.  Defendant cautioned Plaintiff Flores-Hernandez that any mention of the guarantee

would result in a denial of his visa application by the consular officials.  Because of this

coercion, Plaintiff Flores-Hernandez declined to mention the payment of the "guarantee" during

his visa interview.

69. When Plaintiff Flores-Hernandez arrived in Florida, Defendant failed to provide him with

the amount of work stated in the contract.   Plaintiff Flores-Hernandez was able to earn very little

from his part-time work with Defendant, and, as a result, was unable to send money to his father

to repay the loan for his expenses. Although Plaintiff Flores-Hernandez wanted to leave the job

because of the broken promises about work and Defendant's abuse, he was both afraid to leave

because of Defendant's display of a gun and because of his concern regarding potential

consequences to his family if the "guarantee" was forfeited.

- 16 -

70. Defendant knowingly obtained the services of Plaintiffs Flores-Hernandez by subjecting him to excessive labor, threats of immigration consequences, intimidation by brandishing a gun, and threats of serious harm and/or physical restraint, and by threatening serious harm against Plaintiff and his family in Mexico in violation of 18 U.S.C. §1589(a)(1) and (2).

71. By threatening Plaintiff Flores-Hernandez with litigation and other consequences should he leave his job prior to the conclusion of the work contracts, and deceiving him about the terms and length of his visa, Defendant obtained the labor of Plaintiff Flores-Hernandez through abuse and threatened abuse of law and the legal process in violation of 18 U.S.C. § 1589(a) (3).

72. Defendant knowingly obtained and retained the labor and services of Plaintiff Flores-Hernandez by using a scheme, plan and pattern intended to cause Plaintiff to believe that if he left Defendant's employ, he or his family members in Mexico would suffer serious harm or physical restraint, in violation of U.S.C. §1589 (4).

73. As a result of the violations of the TVPRA set out in this count, Plaintiff Flores-Hernandez suffered damages.

74. Plaintiff Flores-Hernandez is entitled to compensatory and punitive damages in an amount to be proven at trial and any other relief deemed appropriate, including reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter an order:

a.  Awarding each Plaintiff his or her respective unpaid minimum wages and an equal amount in liquidated damages;

b.  Awarding Plaintiffs their actual damages for Defendant's breach of the employment contracts, as embodied in the clearance orders as set out in Count II;

c.  Awarding Plaintiff Flores-Hernandez, actual and punitive damages for Defendant's violations of the TVPRA, 18 U.S.C. §1595 (2005).

d.  Awarding Plaintiffs the costs and attorney's fees of this action, under the FLSA;

e.  Awarding Plaintiff reasonable attorney's fees for Defendant's failure to pay the adverse effect wage rate, in accordance with § 448.08, Fla.Stat.;

f.  Awarding Plaintiff Flores-Hernandez a reasonable attorney's fee under the TVPRA;

g.  Granting such relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Karla C. Martinez*
Karla C. Martinez
Florida Bar Number 094674
e-mail          karla@floridalegal.org

*/s/ Gregory S. Schell*
Gregory S. Schell
Florida Bar Number 287199
e-mail:        greg@floridalegal.org

MIGRANT FARMWORKER JUSTICE
        PROJECT
508 Lucerne Avenue
Lake Worth, Florida   33460-3819
Telephone:    (561) 582-3921
Facsimile:    (561) 582-4884
*Attorneys for Plaintiffs*